**Glenn STEVENSON, Appellant,**

v.

**C.H. ADAMS, Appellee.**

**No. A2907.**

Court of Appeals of Texas,
Houston (14th Dist.).

July 1, 1982.

Julius Glickman, Houston, for appellant.

Eugene J. Pitman, Houston, for appellee.

Before J. CURTISS BROWN, C.J., and JUNELL and PAUL PRESSLER, JJ.

JUNELL, Justice.

Appellant Glenn Stevenson (hereafter referred to as Purchaser) brought suit against appellee C.H. Adams (hereafter referred to as Seller) to obtain specific performance of or, in the alternative, damages for breach of a contract for the sale of land and improvements. Purchaser appeals the trial court's action in entering judgment in favor of Seller in disregard of jury findings to the effect that (1) Seller waived the right to insist upon performance by Purchaser at the time for performance set out in the contract and (2) Purchaser and Seller agreed both orally and in writing to extend the time for Purchaser's performance of the contract. The record supports Purchaser's contention that the trial court erred by disregarding jury findings which could reasonably have been inferred from probative evidence offered at trial. We therefore reverse the judgment of the trial court and remand to the trial court with instructions to render judgment for specific performance in accordance with the instructions set forth below.

Purchaser and Seller entered into a contract for deed dated June 10, 1977, which required a down payment of $15,000 and monthly payments of $1,250 from July 1977 through June 1980 and payment of the balance of the $100,000 purchase price plus

interest on July 1, 1980. Prior to the time the final, "balloon" payment became due, Purchaser had made all other payments required by the contract. The contract expresses that time is of the essence and also provides as follows:

> 10. *Default.* ... In the event the Buyer shall fail for a period of 15 days after they become due to pay any of the sums in this contract agreed to be paid, or should the Buyer fail to comply with any of the covenants or conditions of this contract on his part to be performed, then; (a) the Seller shall be released from all obligations in law or equity to convey the property to the Buyer; (b) the Buyer shall forfeit all rights to the property or to the possession thereof; (c) the Seller shall have an immediate right to retake the possession of the property; ...

After Purchaser took occupancy of the premises in August of 1977, he spent over $15,000 to renovate the building. In March of 1980 Purchaser initiated attempts to secure a loan through Gulf Coast Investment Corp., a mortgage banking operation. Prior to July 1, 1980, Purchaser was in contact with Gulf Coast several times a week and kept Seller so informed. On about June 30 or July 1, Purchaser requested a two week extension in order to allow time for completion of the paperwork on a loan from San Jacinto Savings & Loan and, in response to Seller's request (because Seller was not convinced that a loan was actually being processed at San Jacinto Savings & Loan as a result of Gulf Coast's efforts in Purchaser's behalf), Purchaser provided Seller with a letter from Gulf Coast purporting to ask for an extension and show that the loan was in fact being processed. Purchaser and Seller met again on July 3 and, according to Purchaser's testimony, Seller assured Purchaser he "could have thirty days or any reasonable time to go ahead and finish the paperwork on the loan." During that meeting Purchaser gave Seller a check for $1250, and Seller suggested that Purchaser investigate interim financing and also submit a loan application to Gibraltar Savings & Loan Association. Seller expressed the opinion that it would take 3 to 4 weeks to process a new loan and telephoned Gibraltar to inquire about a loan application and, in response to the information he received from Gibraltar and imparted to Purchaser, the parties subsequently signed an instrument entitled "Earnest Money Contract" which covers the subject property and which Purchaser now seeks to characterize as a written extension agreement. On July 9, the loan from San Jacinto Savings & Loan was approved and Purchaser so informed Seller. The loan closing instructions and instruments were received by Stewart Title on about August 6; closing was scheduled for August 19; Purchaser and a representative of Stewart Title attended the closing, but Seller did not. It is undisputed that on July 30, 1980, Seller told Purchaser that it was useless to go any further, that he would no longer accept the money if it was laid on his desk.

■ We first consider those points of error related to the trial court's disregarding the jury's answers to the following special issues:

### Special Issue No. 6

Do you find from a preponderance of the evidence that Glenn Stevenson and C.H. Adams orally agreed, prior to July 16, 1980, to an extension of time for Glenn Stevenson to pay the balance due under the contract of June 10, 1977 ... for the property at 6911 Almeda?

Answer: We do.

### Special Issue No. 9

Do you find from a preponderance of the evidence that C.H. Adams waived the right to insist upon performance by Glenn Stevenson at the time for performance under the June 10, 1977 contract?

Answer: We do.

A jury's findings on special issues may be disregarded only if they are immaterial or if they have no support in the evidence. *Eubanks v. Winn,* 420 S.W.2d 698 (Tex. 1967); *Garza v. Alviar,* 395 S.W.2d 821 (Tex.1965); *Gulf, Colorado & Santa Fe Railway Co. v. Deen,* 158 Tex. 466, 312

S.W.2d 933 (1958). See Tex.R.Civ.P. 301. In our opinion, when the testimony is considered in the light most favorable to the jury findings, Purchaser's testimony in regard to an agreement between the parties and Seller's suggestions that Purchaser pursue alternative means of obtaining financing as well as his acceptance of $1,250 at a time when the balance had become due under the terms of the contract is all probative evidence from which the jury could reasonably have inferred an oral agreement to extend the time for performance and/or waiver of the Seller's rights to insist on strict performance of the June 10, 1977, agreement. Even where the terms of a contract express that time is of the essence, the stipulated time limit may be extended either by agreement or by waiver. *Puckett v. Hoover,* 146 Tex. 1, 202 S.W.2d 209 (Tex. 1947); *Smith v. Hues,* 540 S.W.2d 485 (Tex. Civ.App.—Houston [14th Dist.] 1976, writ ref'd n.r.e.). Such a waiver may be in writing or by parol and may be proved by parol evidence or by circumstances or course of dealing. *Id.* Therefore, in our opinion the trial court erred in disregarding the jury's answers to special issues six and nine.

■ In his brief Seller presents eleven counter-points and one cross-point. By way of counter-points one through four, Seller argues that the trial court's judgment is correct because there is no evidence to support the jury's finding that Purchaser was ready, willing and able to perform, no evidence of tender of performance, and conflicting jury findings on the repudiation issue. Without deciding the merits of Seller's contentions, we hold that he has waived the grounds by which he seeks to vitiate the jury's verdict. Tex.R.Civ.P. 324 provides, in pertinent part, as follows:

\* \* \* \* \* \*

When judgment is rendered non obstante veredicto or notwithstanding the finding of a jury on one or more special issues, the appellee may bring forward by cross-point contained in his brief filed in the Court of Civil Appeals any ground which would have vitiated the verdict or would have prevented an affirmance of

the judgment had one been rendered by the trial court in harmony with the verdict, including although not limited to the ground that one or more of the jury's findings have insufficient support in the evidence or are against the overwhelming preponderance of the evidence as a matter of fact, and the ground that the verdict and judgment based thereon should be set aside because of improper argument of counsel. The failure to bring forward by cross-points such grounds as would vitiate the verdict shall be deemed a waiver thereof, . . . .

The fact that Seller raised one cross-point in addition to eleven counter-points indicates that he is cognizant of the difference between the two. In *Jackson v. Ewton,* 411 S.W.2d 715 (Tex.1967), the Texas Supreme Court discusses the difference between cross-points and counter-points and states that "Rule 324 deals with and requires cross-points, not reply-points or counter-points." The Texas Supreme Court has held that where an appellate court determines that a trial court has entered a judgment non obstante veredicto or a judgment notwithstanding the verdict in error, the appellate court is to reverse the judgment of the trial court and enter judgment in harmony with the verdict, unless the appellee presents by cross-points grounds sufficient to vitiate the jury's verdict or to prevent an affirmance of the judgment had one been entered on the verdict. *Jackson v. Ewton, supra; Billings v. Atkinson,* 489 S.W.2d 858 (Tex.1973). Seller did not comply with the requirements of Tex.R.Civ.P. 324 by bringing forward cross-points to present the errors he claims to have occurred in the trial of this suit for specific performance of a contract for deed in which the trial court rendered judgment notwithstanding the findings of the jury on three special issues. Therefore, Seller has waived the right to attack the jury's verdict on these grounds.

Our disposition of the above issues makes it unnecessary to decide whether the court erred in disregarding the jury's answer to the written extension issue. Likewise, we

do not reach appellant's point of error in regard to the trial court's refusal to submit his proposed special issue on estoppel.

We reverse and remand with instructions that the trial court enter judgment ordering both parties to specifically perform the June 1, 1977, contract for deed after complying with the instructions set forth below. The record shows that Purchaser paid principal and interest on the contract through the payment due on June 1, 1980, and, as of July 1, 1980, Purchaser owed a principal balance of $57,300.15. We further instruct the trial court as follows: (1) determine what payments have been made by Purchaser to Seller since July 1, 1980 (including but not limited to the $1,250 payment made on July 3, 1980, and all $1,500 monthly payments made pursuant to the trial court's order of September 22, 1980, and judgment signed May 26, 1981); (2) credit each such payment first to accrued interest at 8% per annum to the date of each such payment and then to principal; (3) determine in the manner set forth above the balance due by Purchaser up to the date of the judgment to be signed by the trial court in accordance with this opinion; (4) provide in said judgment that Purchaser is required to pay the balance due plus interest thereon at 8% per annum from the date of judgment until full payment of the balance of principal and interest is made; (5) provide in said judgment that contemporaneously with full payment by Purchaser, Seller is ordered to deliver to Purchaser a deed conveying to Purchaser the property in question; (6) set in said judgment a period of time determined by the court to be a reasonable period of time within which both parties shall perform the June 1, 1977, contract for deed to the property at 6911 Almeda, Houston, Harris County, Texas, which is the subject of this lawsuit; (7) determine the amount of money that would be a reasonable attorney's fee for the legal services rendered to Purchaser in this suit and award to Purchaser a judgment against Seller in said amount; and (8) include in the judgment to be rendered by the trial court such other provisions as shall be determined by the trial court to be reasonably necessary and not inconsistent with this opinion.